UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

KENYON DUNAMS                                              CIVIL ACTION

VERSUS

BRANDON MONTGOMERY, ET AL.                    NO. 24-00838-BAJ-SDJ

RULING AND ORDER

Before the Court is Plaintiff's **Motion in *Limine* to Exclude Testimony of Kerry Najolia (Doc. 37).** The Motion is opposed. (Doc. 39). Plaintiff filed a Reply Brief. (Doc. 52). For the following reasons, Plaintiff's Motion is **GRANTED IN PART** and **DENIED IN PART**.

I.    BACKGROUND

This case arises out of the excessive force and retaliation that Plaintiff allegedly suffered while incarcerated at Dixon Correctional Institute. (Doc. 1-2). Plaintiff alleges the following.

On November 20, 2023, Plaintiff was suffering a diabetic episode. (*Id.* ¶ 8). Due to low blood sugar, Plaintiff could not stand up. (*Id.*). Defendant Brandon Montgomery, a former correctional officer, came into Plaintiff's cell to take him to the infirmary for emergency medical treatment, along with two other correctional officers. (*Id.* at ¶ 9).

Montgomery allegedly aggressively ordered Plaintiff to stand up. (*Id.*). Montgomery allegedly shouted profanities at Plaintiff. (*Id.*). Montgomery allegedly

kicked Plaintiff in the stomach and face and began making death threats to Plaintiff. (*Id.* at ¶ 12). Rather than call for medical help, Montgomery allegedly dragged Plaintiff to the infirmary. (*Id.* at ¶ 13).

Plaintiff received treatment from medical personnel in the infirmary, as well as the hospital. (*Id.* at ¶¶ 15–18). Medical personnel placed Plaintiff on suicide watch to protect him. (*Id.* at ¶¶ 16–17). Plaintiff understood that he was in protective custody in the "suicide cell" to protect him from additional attacks from Montgomery. (*Id.* at ¶ 25).

Knowing that Plaintiff would likely submit an ARP concerning his use of force, Montgomery allegedly went to the "suicide cell" to threaten Plaintiff. (*Id.* at ¶¶ 21–22). Plaintiff was asleep and was awoken by Montgomery's blows to his head and face. (*Id.* at ¶ 24). After waking up as a result of Montgomery's attack, Plaintiff stood up. (*Id.* at ¶ 28–29). Without cause, Montgomery sprayed Plaintiff at close range with a chemical agent in his face and eyes, causing Plaintiff severe pain. (*Id.* at ¶ 29). Unable to see, Plaintiff flailed his arms to defend himself from the feared physical attack, when Montgomery overpowered him with several additional punches. (*Id.* at ¶ 30). Montgomery allegedly shouted additional profanities at Plaintiff. (*Id.* at ¶ 31).

Plaintiff allegedly suffered permanent injury from Montgomery's attacks. (*Id.*). While being housed in the infirmary for months with his mouth wired shut, another officer warned Plaintiff that Montgomery was "going to get him," and that next time, Montgomery would kill him. (*Id.* at ¶ 39).

## II.    PROCEDURAL HISTORY

On August 23, 2024, Plaintiff filed suit in the 20th Judicial District Court, East Feliciana Parish. (Doc. 1-2). On October 8, 2024, Defendants removed this case to the Court, alleging federal question jurisdiction. (Doc. 1).

Plaintiff asserts the following claims against Defendants: (1) excessive force; (2) negligence; (3) costs and attorney's fees; and (4) respondeat superior. Named Defendants include the Louisiana Department of Public Safety and Corrections ("DOC") and Brandon Montgomery, a former correctional officer. (Doc. 1-2).

Now, Plaintiff moves to exclude the testimony of Defendants' expert, Kerry Najolia. (Doc. 37). For the following reasons, Plaintiff's Motion is **GRANTED IN PART** and **DENIED IN PART.**

## III.    LEGAL STANDARD

Federal Rule of Evidence 702 provides that a witness may be qualified as an expert by knowledge, skill, experience, training, or education, and that this expert may testify in the form of an opinion or otherwise if it is demonstrated that it is more likely than not that:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

"Under Rule 702, the court must consider three primary requirements in determining the admissibility of expert testimony: 1) qualifications of the expert witness;

2) relevance of the testimony; and 3) reliability of the principles and methodology upon which the testimony is based." *Fayard v. Tire Kingdom, Inc.,* No. CIV.A. 09-171-BAJ, 2010 WL 3999011, at *1 (M.D. La. Oct. 12, 2010). The Court has broad discretion in deciding whether to admit expert opinion testimony. *See Lamar Advert. Co. v. Zurich Am. Ins. Co.,* 533 F. Supp. 3d 332, 340 (M.D. La. 2021) (collecting cases).

"[T]he rejection of expert testimony is the exception and not the rule." *Barnett v. Nat'l Cont'l Ins. Co.,* No. 3:17-CV-153-JWD-EWD, 2019 WL 126732, at *3 (M.D. La. Jan. 8, 2019) (quoting *Johnson v. Samsung Elecs. Am., Inc.,* 277 F.R.D. 161, 165 (E.D. La. 2011)). "Experts should be excluded only if their testimony is so fundamentally unsupported that it cannot possibly help the factfinder." *Gen. Elec. Cap. Bus. Asset Funding Corp. v. S.A.S.E. Mil. Ltd.,* No. CIV. SA-03-CA-189-RF, 2004 WL 5495590, at *5 (W.D. Tex. Oct. 21, 2004) (citing *Viterbo v. Dow Chemical Co.,* 826 F.2d 420, 422 (5th Cir. 1987)). Further, "[a]s a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination." *Hartley v. Dillard's, Inc.,* 310 F.3d 1054, 1061 (8th Cir. 2002).

## IV. DISCUSSION

Plaintiff asks the Court to exclude the testimony of Kerry Najolia, Defendants' expert on "police practice, procedure, training, officer survival/defensive tactics, officer use of force and police canines." (Doc. 37; Doc. 39 at 2). Plaintiff argues that

4

Najolia is not qualified to give opinions on penological use of force because he has no experience working in the prison setting. (Doc. 37 at 1). Plaintiff also argues that Najolia's opinions: (1) will not assist the trier of fact; (2) are impermissible legal conclusions; and (3) rely on hearsay. (*Id.*). The Court will address each argument in turn.

### A. Whether Najolia is Qualified.

First, Plaintiff argues that Najolia has no expertise in penological practices and procedures because he has never worked in a prison setting. (Doc. 37-2 at 1). Defendants respond that Najolia has 42 years of law enforcement experience, including patrol work, investigations, SWAT, and law enforcement consulting. (Doc. 39 at 5). Najolia attests that his academic instructional background spans the last 28 years, including roles as POST Academy Staff Instructor, Assistant Training Director, and Training Director for the Jefferson Parish Sheriff's Office Training Academy. (*Id.* ¶¶ 4–6). Najolia attests that "POST is a state agency that sets the training standards for law enforcement agencies in Louisiana." (*Id.* ¶ 6). Najolia further attests that he regularly conducts training for correctional officers. (*Id.* ¶ 5).

In similar Section 1983 actions brought by incarcerated persons against prison officials for excessive force, the Court has found Najolia to be " unquestionably a qualified expert in the area of law enforcement, training and use-of-force[.]" *Gage v. Jenkins*, No. CV 13-0638-SDD-EWD, 2017 WL 2190064, at *4 (M.D. La. May 18, 2017) (Wilder-Doomes, J.) (involving an excessive force claim brought by incarcerated person against prison officials) *see also Haynes v. Parker,*

5

No. CV 13-0818-SDD-EWD, 2017 WL 1027028, at *4 (M.D. La. Mar. 16, 2017) ) (Wilder-Doomes, J.) (same). Although Najolia's experience in prison settings, or lack thereof, is a topic that Plaintiff may explore on cross-examination, it does not form a basis for the wholesale exclusion of Najolia's testimony. Plaintiff's Motion will be **DENIED** in this respect.

## B. Whether Najolia's Testimony Will Assist the Trier of Fact.

Second, Plaintiff argues that Najolia's expert report does what the jury alone is allowed to do: weigh evidence and make credibility determinations. (Doc. 37-2 at 3). According to Plaintiff, "Najolia's opinions may be summed up with [] Montgomery did nothing wrong." (*Id.* at 4). Plaintiff contends that there is no role for an expert such as Najolia in this case, which asks the jury to believe certain facts and disbelieve or ignore others. (*Id.* at 13).

Defendants argue that the purpose of Najolia's testimony is to provide the jury with guidelines of customary and proper procedures by which to judge the Defendants' actions for reasonableness. (Doc. 39 at 8). Defendants further contend that Najolia's specialized knowledge provides information on use of force policies that will assist the trier of fact in discerning whether Montgomery's use of force was excessive, which is the ultimate issue in this matter. (*Id.* at 9).

Najolia's Report contains the following opinions, among others:

- Montgomery's training records reflect continuous in-service training in various Corrections and peace officer-related topics.

- The Dixon Correctional Institute's training, procedures, and protocols, which were in effect at the time of this incident, reflected contemporary law enforcement techniques consistent with those of other law enforcement agencies in this state.

6

- Inmate Offenders are required to follow verbal orders from DCI Staff to maintain safety, security, and good order in this institution.

- Several opinions regarding training on the use of force, including the training models used.

(Doc. 37-3 at 10–14). Related to the particular conduct at issue in this case, Najolia opines:

- If the trier of fact determines that the case facts are what Plaintiff testified to, then Captain Montgomery was not authorized to use any force on Plaintiff. DCI prohibits corporal punishment. Based on Plaintiff's case facts, Montgomery['s] use of force was unauthorized and in violation of policy and procedures.

- Montgomery was authorized to use OC Spray on [Plaintiff] based on POST officer survival, defensive tactics training for control purposes, self-defense, and to protect others.

- Montgomery followed his training in the manner in which he interacted with Plaintiff, based on all the circumstances as testified to by the correctional officers.

(*Id.*).

A review of caselaw addressing similar challenges to Najolia's proposed expert opinions is instructive. In *Gage*, the Court excluded Najolia's testimony because "Najolia essentially engages in a credibility determination and accepts, without any basis in fact, [d]efendants' version of events." *Gage*, 2017 WL 2190064, at *4. The Court reasoned that "in simply accepting [d]efendants' version of the facts in this case, Najolia's report artificially bolsters and potentially elevates [d]efendants' version of the facts without any apparent basis for such enhanced credibility." *Id.* at *5.

Similarly, in *Haynes*, the Court found "that the testimony of [] Najolia relative to the reasonableness of [d]efendant['s] action in utilizing chemical spray would not

7

reliably assist the jury in resolving this contested issue in this case and should therefore be excluded as to this issue." *Haynes*, 2017 WL 1027028, at *4. The *Haynes* Court, however, permitted Najolia to testify regarding the generalized use of a chemical agent. *Id.* at *5 ("[T]he Court finds that [p]laintiff has not met his burden in opposing the opinion testimony of Najolia relative to the generalized use of chemical agent and the relative effect of greater or smaller amounts of chemical agent, and the witness' testimony in this regard shall be allowed at trial.").

In *Brooks* and *Cortez*, the U.S. District Court for the Eastern District of Louisiana found that "concerns about Najolia's reliance on one-sided and incorrect facts are properly addressed on cross-examination, not by excluding Najolia's testimony in its entirety." *Brooks v. Kahrs*, No. CV 21-2280, 2025 WL 890694, at *2 (E.D. La. Mar. 21, 2025) (Long, J.); *see also Cortez v. Custard*, No. 20-CV-3110, 2024 WL 2941166, at *4 (E.D. La. June 11, 2024) (Fallon, J.) (finding that "concerns that Najolia's opinions are based on incorrect and one-sided facts can be addressed at trial on cross-examination").

In *Joseph*, the Eastern District of Louisiana adopted the following approach:

> So long as Defendants introduce sufficient evidence at trial to support their version of the facts (and these facts are the version of the facts assumed by Najolia), the Defendants may ask Najolia to testify [regarding these facts]. Najolia may not simply regurgitate (or anticipate) factual testimony about the events at issue. Instead, once the facts necessary for him to render an opinion are in evidence, he may assume those facts as a hypothetical and give opinion testimony based on the assumption of those facts.

*Joseph v. Doe*, No. CV 17-5051, 2021 WL 2313475, at *5–6 (E.D. La. June 7, 2021) (Morgan, J.) (internal citations omitted). Under the facts of this case, the Court finds

8

this approach appropriate.

Here, Najolia may testify generally about the appropriate use of force in the prison setting. Once the facts necessary for Najolia to render an opinion are in evidence, he may assume those facts as a hypothetical and give opinion testimony based on the assumption of those facts. Najolia may not, without more, offer the following opinions, which simply accept Defendants' version of events and reject Plaintiff's version of events:

- Montgomery was authorized to use OC Spray on [Plaintiff] based on POST officer survival, defensive tactics training for control purposes, self-defense, and to protect others.
- Montgomery followed his training in the manner in which he interacted with Plaintiff[.]

(Doc. 37-3). Plaintiff's Motion will be **GRANTED** in this respect.

### C. Whether Najolia May Offer Legal Conclusions.

Third, Plaintiff argues that the question of whether Defendant was justified in his use of force "imposes legal questions that Najolia cannot testify to without invading the province of both the jury and the [C]ourt." (Doc. 37-2 at 12).

Defendants respond that "Najolia's testimony will provide the trier of fact guidelines of customary and proper procedures and intel on circumstances of when and how force can be used to gain compliance from a non-compliant inmate." (Doc. 39 at 9). Defendants argue that an expert may testify "for the purpose of providing a guideline for determining proper conduct[,]" but agree that an expert may not testify "as to the reasonableness of that conduct or provide a legal conclusion." (*Id.* at 5).

9

In accord with other courts that have considered this issue, the Court finds that Najolia may not opine on the ultimate issue of whether Montgomery's actions were "reasonable" under the applicable legal standard. *See Brooks*, 2025 WL 890694, at *3 ("Najolia may not opine on the ultimate issue of whether Deputy Kahrs's actions were 'reasonable.'"); *see also Cortez*, 2024 WL 2941166, at *4 ("Najolia will not be allowed to opine on the ultimate issues of whether the officer's actions were generally 'reasonable' under the applicable legal standard."); *Joseph*, 2021 WL 2313475, at *3 ("Whether the officers' actions were reasonable or they used excessive force is an ultimate question for the jury to decide after they have heard the evidence and this Court has instructed them on the law at the conclusion of the case."); *id.* ("Testimony that tells the jury what conclusion to reach or merely states a legal conclusion is not helpful to the jury."). Plaintiff's Motion will be **GRANTED** in this respect.

**D. Whether Najolia May Rely on Medical Summary.**

Finally, Plaintiff argues that Najolia improperly relied on a medical summary in forming his opinions, which constitutes hearsay.[1] (Doc. 37-2 at 3). Defendants respond that Najolia reviewed Plaintiff's medical records to understand the facts of the alleged incident. (Doc. 39 at 12). Defendants contend that Najolia did not rely on the medical summary to form any medical opinions, but rather, to assist him in establishing a timeline of facts. (*Id.*).

---

[1] Plaintiff also argues that Defendants never produced the medical summary at issue in discovery. (Doc. 37-2 at 3). Defendants respond that "Plaintiff has been provided with every document that was provided to Najolia, including all those that formed the basis of Najolia's opinions[.]" (Doc. 39 at 7). Defendants attach discovery responses that they assert contain the documents at issue. (Doc. 39-3). The Court will not address this dispute at this time, as it is an issue that is more properly raised in a separate motion.

10

Najolia's reliance on a medical summary does not support exclusion of Najolia's opinion at this time. Instead, "once the facts necessary for [Najolia] to render an opinion are in evidence, he may assume those facts as a hypothetical and give opinion testimony based on the assumption of those facts." *Joseph*, 2021 WL 2313475, at *3 (holding that Najolia could testify "[s]o long as Defendants introduce sufficient evidence at trial to support their version of the facts"); *see also Cortez*, 2024 WL 2941166, at *3. Should Defendants fail to offer the medical summary at trial in an admissible form, Plaintiff may re-urge the objection. Plaintiff's Motion will be **DENIED** in this respect.

## V.    CONCLUSION

Accordingly,

**IT IS ORDERED** that Plaintiff's **Motion in *Limine* to Exclude Testimony of Kerry Najolia (Doc. 37)** is **GRANTED IN PART** and **DENIED IN PART** as set forth above.

Baton Rouge, Louisiana, this 23rd day of March, 2026

**JUDGE BRIAN A. JACKSON**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

11